### GUNNING v. GUNNING et al.

*(Supreme Court, General Term, First Department. November 18, 1892.)*

SAVINGS BANK—ACTION FOR DEPOSIT—EVIDENCE.

    Plaintiff sued to recover from a savings bank a deposit alleged to have been made with her money, by and in the name of a man now dead, whom she lived with as wife. She pleaded that the money was hers, and also that deceased assigned to her his right and title thereto. She testified that the bank book was always in her possession, but an entry showed that deceased had checked out a large part of the original deposit, which the evidence showed he invested in his own name. She testified also that the deposit was made in her presence by a draft from another bank which she never saw. She did not produce the draft, nor explain where she got the money. The evidence as to the means of deceased was conflicting. *Held* that, as the only material evidence for plaintiff was her own, and was incompetent, because it related to transactions between her and deceased, and was unreliable, because she swore to two inconsistent causes of action, and was conflicting, it was error to submit the case to the jury.

Appeal from special term, New York county.

Action by Sarah Gunning against Catherine Gunning and James Gunning, impleaded with the North River Savings Bank. Judgment for plaintiff. From the judgment, and from an order denying motion for new trial, defendants appeal. Reversed.

Argued before VAN BRUNT, P. J., and O'BRIEN and LAWRENCE, JJ.

*Denis Quinn, (J. W. Shepard,* of counsel,) for appellants. *Henri Prossprich,* for respondent.

VAN BRUNT, P. J. This action was brought against the North River Savings Bank to recover the amount of a fund on deposit with it to the credit of one Martin Gunning. The complaint alleged that on or about the 10th of August, 1889, the plaintiff, in the name of Martin Gunning, deposited with the defendant $10,459.75 in money; that the defendant promised to repay the plaintiff, through Martin Gunning aforesaid, on demand; that the defendant has repaid the plaintiff, through Martin Gunning, on account of the aforesaid sum, the sum of $8,100, leaving the sum of $2,359.75 still due to the plaintiff; and that the plaintiff has demanded of the defendant the last-mentioned sum, which the defendant has neglected and refused to pay. The North River Bank thereupon made a motion upon papers showing that Martin Gunning had died, and letters of administration had been issued upon his estate to the defendants James and Catherine Gunning, for a substitution of such representatives of Martin Gunning in its place and stead, and for leave to pay the money into court. An order was thereupon entered, making the personal representatives of Martin Gunning, deceased, parties defendant, and providing for the service of pleadings upon them. The plaintiff thereupon served an amended complaint, alleging, among an almost innumerable number of irrelevant allegations, that in March, 1875, the plaintiff, relying upon the allegation of Martin Gunning that he was a single man, and had no wife or children, agreed with said Martin Gunning that they should become man and wife, and live together as such during the term of their natural lives; and they did so live together until April, 1891, when Martin Gunning died. That by plaintiff's industry, labor, and economy she had saved and accumulated out of the proceeds of her business $10,459.75, which amount of profits were deposited to the credit of said Martin Gunning, in the name of the said Martin Gunning, with the defendant the North River Bank, which deposit was

made to the credit of said Martin Gunning without the knowledge and consent of the plaintiff. That after said deposit Martin Gunning delivered to the plaintiff the bank book, and that since said delivery the plaintiff has remained in full possession and control thereof; and that, being ignorant, illiterate, and unable to read or write, she was unable to discover the fact that the deposit was made in Gunning's name. And for a separate cause of action the plaintiff alleged that on or about the 10th of August, 1889, or thereabouts, Martin Gunning deposited with said bank the sum of $10,475, and that prior to his death the said Gunning, for value received, assigned, transferred, and set over to the plaintiff the aforesaid balance, and all his right, title, and interest thereto; and claimed a recovery upon that ground. This complaint was sworn to by the plaintiff, and the answer was substantially a general denial. Upon the trial the jury found a verdict in favor of the plaintiff, and from the judgment thereupon entered, and from an order denying a motion for new trial, this appeal is taken

It seems to us, in view of the oath of the plaintiff in respect to this transaction, as to two causes of action, which are absolutely inconsistent with each other, that her testimony was entitled to very little credit. It would appear that she was willing to swear to anything for the purpose of getting possession of this money. In the first place, she swears that the money is hers, and that the same was deposited by Gunning in his own name without her knowledge and consent; and, in the second place, she alleges that, for value received, Martin Gunning assigned, transferred, and set over to the plaintiff all his right, title, and interest in this money. These claims are so inconsistent that it was impossible for both to be true, and yet the plaintiff swears to the accuracy of each. The only evidence which tends in the slightest degree to support the claim of the plaintiff is her own, which is to the effect that she was keeping lodging houses and soup houses in various parts of the city, and that the money she earned was put in the New York County Bank in Fourteenth street; that she did not draw it out, for there was an injunction put on it; that there was then $2,300 and some small amounts besides; that she did not know exactly the year it was put in,—about 10 or 12 years ago. Then she states that she had over $10,000 when she went to Ireland; that she went down to Mr. Walsh's, in Wall street, got a draft for it; that she carried the money in her bosom; that the draft was sent to the Provincial Bank of Ireland in the name of her mother, Fitzsimmons, Martin Gunning being with her at this time; that they went together to Ireland, stayed there two or three years, and came back, the money being remitted to the North American Bank, 52 Wall street; that she went there with Gunning, got the money and the check, and went up to the North River Bank, and deposited it, and subsequently she drew $7,500, which was drawn out for buying a house in St. Mark's place. Upon cross-examination it appeared that the title to this house was taken in the name of Martin Gunning, and that she never saw the check which was given by the North American Bank, and which she states went up to the North River Bank, her answer being: "I don't see the check; but Gunning and I went up there." No draft of the kind mentioned was produced or shown ever to have existed. The plaintiff, upon the trial, produced the bank book, claiming to have had possession of it since the time of the deposit, which is about as correct as most of the other testimony upon the part of the plaintiff, because it appears from her own testimony that Gunning drew money subsequently from the bank, amounting to $7,000 or $8,000, which drafts are entered upon the book, and Gunning must have had the book then. There was some other testimony as to declarations upon the part of Gunning that he had no money, and also the examination of Gunning in proceedings in respect to alimony in a suit brought against him by his wife for divorce. Upon the part of the defendants testimony was offered going to show that at the time Gunning went

away he was a man of considerable means, and had considerable money. The court submitted the case to the jury, and they found a verdict in favor of the plaintiff, which submission was duly excepted to upon the part of the defendants. We think, upon an examination of the whole case, that there was no legal evidence which justified the submission of any question to the jury. Most of the evidence upon the part of the plaintiff was clearly incompetent. being evidence of transactions between the deceased, Gunning, and herself. In fact all of the evidence, if it may be so called, pertinent to the question as to the ownership of the money, fell within this rule. Gunning being dead, it was impossible for him to answer, and the plaintiff could tell what story she pleased in regard to the ownership of this fund. She gave no explanation at all where she got this money from. She says she had it in the County Bank, but does not produce any evidence of the fact; and, as we read the evidence, that only applies to a small portion of the amount. And the significant fact is developed by the evidence that, when $7,000 or $8,000 of this money claimed to belong to the plaintiff is drawn for the purpose of buying a house, the title is taken in Gunning's name, without dissent on her part, so far as this case discloses. The possession of the bank book under the circumstances means nothing. Gunning had died in her house, where they were living together as man and wife, and there was no difficulty about her obtaining possession of the book after his death; and the circumstances of her inconsistency in the manner in which she stated her cause of action must necessarily, as already stated, weaken any statement that she might make. If the property of dead people is to be transferred upon such loose evidence as this, there is but little security for the personal representatives of such deceased. We think the judgment should be reversed, and a new trial ordered, with costs to appellants to abide the event. All concur.